UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STATE FARM FIRE & CASUALTY COMPANY
a/s/o DAVID HAWKER,

Plaintiff,

-against-

SWIZZ STYLE, INC.,

Defendant.

No. 15 Civ. 9432 (NSR)

OPINION & ORDER

SWIZZ STYLE, INC.,

Third-Party Plaintiff,

-against-

STADLER FORM AKTIENGESELLSCHAFT,

Third-Party Defendant.

NELSON S. ROMÁN, United States District Judge

An air purifier designed overseas by a Swiss corporation caught fire and caused damage
to a home located in Bedford Hills, NY. The insurance company covering the home brought suit
against the U.S. distributor of the air purifier claiming design defects caused the fire. The
distributer counter-sued the foreign manufacturer. The foreign third-party defendant now seeks
to dismiss the third-party complaint for lack of personal jurisdiction. Despite recent Supreme
Court cases restricting the exercise of personal jurisdiction over foreign defendants, the
manufacturer in this case has sufficient contacts with New York to establish specific jurisdiction.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/23/2017

For the following reasons, the motion to dismiss is DENIED.

## BACKGROUND

For the purposes of determining whether personal jurisdiction exists over the third-party

defendant, the relevant facts taken from the motion papers are as follows.[1]

## I.        Facts Alleged in the Underlying Action

In mid-2012, David Hawker, a resident of Bedford Hills, New York, came to own a

"Viktor" air purifier when it was "drop-shipped" to him via "the gilt.com website" by Swizz

Style, Inc.  (Answer ¶ 8, ECF No. 11.)  On June 26, 2014, the air purifier caught fire at Mr.

Hawker's property in Bedford Hills causing damage to his home and personal property.  (Notice

of Removal, Ex. 1 (Verified Compl.) ¶¶ 10, 12.)  Fortunately, Mr. Hawker had an insurance

policy issued by State Farm Fire & Casualty Co. ("State Farm") covering the property and

personal items contained therein.  (*Id.* ¶ 8.)

After the fire, State Farm exercised its rights under the policy and, as subrogor, sued

Swizz Style on behalf of Hawker, as subrogee, alleging Swizz Style's negligence led to the

defective air purifier catching fire and causing property damage in the amount of $267,141.47.

(*Id.* ¶¶ 3, 14, 20.)  State Farm alleged that Swizz Style "designed, manufactured, built, tested,

distributed, delivered, sold, repaired, serviced, and/or inspected" the air purifier and "sold and

distributed [the] air purifier to wholesale and retail establishments for its sale and distribution in

the State of New York."  (*Id.* ¶¶ 10-11.)

Swizz Style responded to the allegations by admitting that "it sold the [] air purifier [at

issue] before June 26, 2014" and further explaining that "it sells the V[iktor] air purifier in the

---

[1]  The motion was fully briefed as of August 30, 2016.  (*See* Mem. in Supp. of Mot. ("Stadler Mem."), ECF No. 46; Aff. Thomas Becker in Supp. of Mot. ("Becker Aff."), ECF No. 45; Mem. in Opp'n of Mot. ("Swizz Opp'n"), ECF No. 48; Decl. Juerg Baenziger in Opp'n to Mot. ("Baenziger Decl."), ECF No. 49; Reply Mem. in Supp. of Mot. ("Stadler Reply"), ECF No. 50.)

United States" but "purchased and continues to purchase the [] air purifiers it sells from Stadler

Form Aktiengesellschaft" ("Stadler Form"), which is located in Switzerland.  (Answer ¶ 5.)

Swizz Style additionally denied that the air purifier was defective and denied responsibility for

whatever acts led to Hawker's damages.  (*Id.* ¶¶ 21-22.)  Rather, Swizz Style alleged it would be

entitled to indemnification from Stadler Form, the party "solely responsible for defectively

designing, manufactured, building, testing, distributing, delivering, selling, repairing, servicing

or inspecting the air purifier in all relevant respects[.]"  (Third Party Compl. ¶¶ 14, 17.)

## II.     The Relationship Between Distributor Swizz Style, Manufacturer Stadler Form, and New York

Stadler Form was organized under the laws of Switzerland starting in 1998 and operates

out of Lug, Switzerland.  (Becker Aff. ¶¶ 3, 4.)  Stadler Form has never been incorporated in

New York, has never maintained its principal place of business or an office in New York, has

never maintained any employees or bank accounts in New York, has never been registered to do

business or had a registered agent for service of process in New York, has never owned or leased

any property in New York or had a New York phone number, and has never paid any taxes to

New York.  (*Id.* ¶¶ 6-14, 17.)  Stadler Form alleges that it maintains no assets in New York, and

that no employee of Stadler Form travelled to New York on its behalf in connection to the

matters at issue in this lawsuit.  (*Id.* ¶¶ 15, 16.)

Instead, Swizz Style, an Ohio-based corporation, purchased Viktor air purifiers from

Stadler Form pursuant to a written distribution agreement.  (Third Party Compl. ¶¶ 6, 7, 13.)

Swizz Style has been the exclusive U.S. distributor of Stadler Form's goods since 2006.

(Baenziger Decl. ¶ 5.)  The purifiers are shipped "free-on-board" and title is transferred between

Stadler Form and Swizz Style in China.  (Becker Aff. ¶ 22.)  Stadler Form thus asserts that the

3

allegedly negligent actions connected to the manufacturing of the air purifier would have taken place in either Switzerland or China.  (*Id.* ¶ 19.)

Stadler Form asserts that it does not directly sell, distribute, or transfer the Viktor air purifiers to citizens of New York.  (Becker Aff. ¶¶ 20-21.)  Moreover, Stadler Form alleges it "did not have any input and/or control regarding where Swiss Style would ultimately sell the [] air purifiers in the United States."  (*Id.* ¶ 23.)  Instead, it was Swizz Style that had the "responsib[ility] for selling and delivering the [] air purifiers to end users and retailers in the United States."  (*Id.* ¶ 24.)  Swizz Style, however, alleges that Stadler Form—which "derives most of its revenue from international commerce"—chose to "target[] New York as a market for its fashionable, stylish products, and was keenly aware of the significant sales of [its products]" in New York.  (Baenziger Decl. ¶¶ 2, 8.)

In fact, Swizz Style and Stadler Form engaged in "many meetings in 2010 and 2011 in which [they] discussed [] th[ose] considerations and made New York a target because of them." (*Id.* ¶ 10.)  Swizz Style alleges that focusing on New York paid off, as Stadler Form knew: in 2012, "monthly meetings by Skype" took place between the two where Swizz Style "advise[d] Stadler Form's personnel, including its principal Martin Stadler, on significant sales and its significant retailer/resellers buyers, especially those in New York."  (*Id.* ¶ 12.)  Swiss Style alleges that at the time Mr. Hawker purchased his Viktor air purifier, New York made up 34% of Swiss Style's sales of Stadler Form products.  (*Id.* ¶ 14.)  As to Swizz Style's knowledge of Stadler Form's main source of revenue, the principal of Swizz Style—based on his "long association with Stadler Form and its principals before and after December 2011"[2]—asserts that

---

[2] Swizz Style also alleges that it and Stadler Form were "affiliated corporations" up until the end of 2011, when Mr. Baenziger sold his shares in one company for exclusive control of Swizz Style and the corporate relationship changed.  (Baenziger Decl. ¶¶ 4, 6.)  The full extent of the agreements between the corporations and their structures are unclear.

Stadler Form "derives most of its substantial revenues from international commerce." (*Id.* ¶ 19; *see also* Stadler Reply at 6 (undisputed).)

Regarding the fire at issue in the direct action, Swizz Style alleges that Stadler Form provided "retrofitting kits" to "correct[] a potential overheating condition in the Viktor air purifiers sold . . . into New York" after a government recall of the purifiers in Europe between 2011 and 2012. (*Id.* ¶ 3.) Moreover, Swizz Style alleges Stadler Form "encouraged" it to delete any records of the reworking of the units, which it contends demonstrates Stadler Form "knew or should have known that it could be called to account for a fire in New York." (*Id.*) The email excerpt cited by Swizz Style indicates that Thomas Becker, Production and Quality Control Manager for Stadler Form, suggested Swizz Style could "delete the message on [its] homepage," presumably regarding the overheating issue, since Swizz Style was "able to contact nearly all [of its] customers," particularly since "it was not a require[ment] from the government that [Swizz Style] do [the] rework[.]" (*Id.* ¶ 17; *see also* Becker Aff. ¶ 2 (noting Mr. Becker's history with the company).)

## III.    Procedural History

On October 22, 2015, Plaintiff State Farm filed suit against Defendant Swizz Style in New York state court. (Notice of Removal ¶ 1, ECF No. 1.) On December 1, 2015, Swizz Style removed the state court action to this Court on the basis of diversity jurisdiction. (Notice of Removal ¶¶ 2-3, 5.)[3] Swizz Style then filed a third-party complaint against Stadler Form on January 29, 2016. (ECF No. 17.) Stadler Form has moved to dismiss that complaint on the basis

---

[3] On the basis of the pleadings, affidavits, and declarations submitted, the parties are entirely diverse and the amount in controversy is greater than $75,000. *See* 28 U.S.C. § 1332. State Farm is an Illinois corporation having its principal place of business in Bloomington, Illinois; Mr. Hawker is a citizen of the State of New York residing in Bedford Hills, New York; Swizz Style is an Ohio corporation having its principal place of business in Dover, Ohio; and Stadler Form is a Swiss corporation having its principal place of business in Zug, Switzerland. (Third Party Compl., ¶¶ 4-7; Becker Aff. ¶¶ 3, 4; Baenziger Decl. ¶ 5.)

that the Court cannot assert personal jurisdiction over the Swiss company. (ECF No. 42.) Swizz Style has requested the opportunity to take jurisdictional discovery in the event the Court finds Swizz Style has failed to establish jurisdiction. (*See* Swizz Opp'n at 6, 17; Baenziger Decl. ¶ 24 (describing areas where discovery may be needed).)

## STANDARD ON A MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

"In order to survive a [Rule 12(b)(2)] motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)). "Such a showing entails making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (alteration in original) (citation omitted). Although the "plaintiff bears the ultimate burden of establishing jurisdiction over the defendant by a preponderance of evidence," *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016) (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)), the Court will "construe the pleadings and any supporting materials in the light most favorable to the plaintiff[]" when considering whether such a showing has been made. *Licci*, 732 F.3d at 167 (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).

## DISCUSSION

The Court must decide whether Swizz Style, an Ohio corporation, can assert personal jurisdiction over Stadler Form, a Swiss corporation, in this suit brought under diversity jurisdiction in a federal court located in New York: the forum where the injury is alleged to have occurred. "In diversity cases . . ., a district court looks to the law of the state in which it sits to

6

determine whether it has personal jurisdiction over foreign defendants." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945)); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc) (Friendly, J.)) ("[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee."). After "determin[ing] whether the defendant is subject to jurisdiction under the law of the forum state—here, New York"—a court must consider "whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (citing *Licci*, 732 F.3d at 168).

"[A] court may exercise two types of personal jurisdiction over a corporate defendant properly served with process[:] . . . specific (also called 'case-linked') jurisdiction and general (or 'all-purpose') jurisdiction." *Brown*, 814 F.3d at 624. "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state." *Id.* In New York, there are four varieties of in-state activities that can subject a foreign defendant to jurisdiction pursuant to New York's "long-arm" statute, N.Y. C.P.L.R. § 302(a). *See Licci*, 732 F.3d at 168. "General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Brown*, 814 F.3d at 624. New York permits the exercise of general jurisdiction, pursuant to N.Y. C.P.L.R. § 301, "where a company 'has engaged in such a continuous and systematic course of "doing business"

[in New York] that a finding of its "presence" [in New York] is warranted.'"  *Sonera*, 750 F.3d

at 224 (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 77 N.Y.2d 28, 33 (1990)).

Third-Party Plaintiff Swizz Style does not assert that Third-Party Defendant Stadler Form

can be subjected to general jurisdiction.  (Swizz Opp'n at 3.)[4]  Therefore, the Court narrows its

focus to determine 1) whether Stadler Form is subject to specific jurisdiction pursuant to N.Y.

C.P.L.R. § 302(a), and 2) whether exercising personal jurisdiction over Stadler Form would

comport with due process.

## I.        Specific Jurisdiction under New York law

Under New York's long-arm statute, a court has specific jurisdiction over a foreign

defendant that: 1) "transacts any business within the state or contracts anywhere to supply goods

or services in the state," 2) "commits a tortious act within the state," 3) "commits a tortious act

[outside] the state causing injury to person or property within the state," or 4) "owns, uses or

possesses any real property situated within the state."  N.Y. C.P.L.R. § 302(a).  If the alleged

tortious act occurred outside of New York but caused injury inside New York as in this case,

then there are additional prerequisites to asserting jurisdiction over the foreign defendant.  The

defendant must either a) "regularly do[] or solicit[] business" in New York, b) "engage[] in any

other persistent course of conduct" in New York, c) "derive[] substantial revenue from goods

used or consumed or services rendered" in New York, or d) "derive[] substantial revenue from

interstate or international commerce" and "expect[] or should reasonably expect the act

[occurring outside New York] to have consequences" in New York.  N.Y. C.P.L.R. § 302(a)(3).

---

[4]  Given Stadler Form's generally lacking physical presence in the state, and the separation between itself
and its U.S. distributor, Swizz Style, the Court additionally finds it unlikely that Stadler Form's relationship to New
York is the "exceptional case" rendering it "at home" in this forum.  *See Daimler AG v. Bauman*, 134 S. Ct. 746,
761 n.19 (2014); *see also Brown*, 814 F.3d at 629 ("mere contacts, no matter how 'systematic and continuous,' are
extraordinarily unlikely to add up to an 'exceptional case'"); *Sonera*, 750 F.3d at 226 (even if various contacts with
New York were imputed to foreign corporation at issue, it would not be "at home").

The third basis for asserting specific jurisdiction is relevant to the instant dispute involving Stadler Form, as the alleged defective design of the air purifier would have taken place by Stadler Form in Switzerland or China, and the result of the defective design was felt in New York when the purifier caught fire.  Swizz Style relies on *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999), to establish personal jurisdiction over Stadler Form pursuant to the final avenue available under § 302(a)(3)—substantial revenue derived from international commerce coupled with a reasonable expectation that the corporations actions outside of the state would have consequences in the state.  *See* N.Y. C.P.L.R. § 302(a)(3)(ii).  Under this portion of the long-arm statute, "'[t]he test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one,'" and "the simple likelihood or foreseeability 'that a defendant's product will find its way into New York does not satisfy this element[.]'"  *Kernan*, 175 F.3d at 241 (quoting *Allen v. Auto Specialties Mfg. Co.*, 45 A.D.2d 331, 333 (3d Dep't 1974), and *In re DES Cases*, 789 F. Supp. 552, 570-71 (E.D.N.Y. 1992)).[5]

In *Kernan*, the Second Circuit determined that the court had personal jurisdiction over a Japanese manufacturer under § 302(a)(3)(ii) even though the company operated through a Pennsylvania distributor and did not directly serve consumers in New York.  *Id.* at 242.  The Circuit emphasized the exclusivity of the sales agreement between the manufacturer and the distributor, which sold the allegedly defective product "hot stamping press" at issue in the case, and the manufacturer's "general knowledge" that the distributor would resell machines in Pennsylvania and throughout the United States.  *Id.*  Moreover, the exclusive sales agreement

---

[5]  "There is some uncertainty as to whether courts should require 'purposeful availment' as part of the foreseeability element."  *Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 339 (E.D.N.Y. 2013) (finding § 302(a)(3)(ii) not met after incorporating the minimum contacts due process analysis into the long-arm statute).  This Court opts to keep the two analyses separate absent a clear indication from the New York state courts.

permitted the sale of the Japanese manufacturer's product throughout the world, though it did not

specifically direct the Pennsylvania sales agent to target the New York market. *Id.*

Nevertheless, the *Kernan* court was satisfied that the manufacturer "did indeed attempt to serve

the New York market, even if it did so indirectly," such that the manufacturer might have

expected its actions to have consequences in New York. *Id.*

The court in *Kernan* analyzed the differences between *Schaadt v. T.W. Kutter, Inc.*, 169

A.D.2d 969, 970 (3d Dep't 1991), where the Third Department of New York's Appellate

Division concluded a German manufacturer of a meat packing machine could *not* be subjected to

New York's long-arm statute, and *Kappas v. T.W. Kutter, Inc.*, 192 A.D.2d 402, 402 (1st Dep't

1993), where the First Department sought a more complete record regarding the same

manufacturer's contacts with New York.  Notably, the *Kappas* court looked at the distributor's

servicing of machines in New York and the manufacturer's warranting of the machines—

considering the nature of the contractual relationship between the parties and the imputation of

contacts on an agency basis.  Ultimately, the *Kernan* court found the potential for "the exchange

of information relevant to product development" to be a key factor tipping towards the *Kappas*

side of the scale and away from *Schaadt*, meaning that the manufacturer's potential for

awareness of profitable markets for the machines militated in favor of exercising jurisdiction

over the manufacturer.  Stadler Form largely ignores *Kernan* except to question its continued

viability in passing, which is discussed further below, and to strenuously argue that this case is

more like *Schaadt*.  (*See* Stadler Reply at 12; *see infra* Section II (due process analysis).)

Until the Second Circuit directly addresses *Kernan*, it controls this Court's analysis of

jurisdiction pursuant to N.Y. C.P.L.R. § 302(a)(ii)—which may be broader than the confines of

due process—and its applicable easily leads to the same result with regard to New York's long-

arm.  *See, e.g.*, *Ikeda v. J. Sisters 57, Inc.*, No. 14 Civ. 3570 (ER), 2015 WL 4096255, at *5, *8

(S.D.N.Y. July 6, 2015) (personal jurisdiction was appropriate under New York law but would

not satisfy the demands of due process).  Based on the allegations presented and Swizz Style's

supporting declaration, Swizz Style has made a prima facie showing that Stadler Form derives

substantial revenue from international commerce[6] and should reasonably have expected the

potential design flaw associated with the air purifier to have ramifications in the United States

generally and New York specifically.  Indeed, Stadler Form is alleged to have participated in

monthly meetings where New York was target based on design and market considerations.

     Therefore, the Court must now determine whether exercising jurisdiction over Stadler

Form pursuant to New York's long-arm statute would comport with due process.

## II.     Due Process Considerations

     The Supreme Court has reshaped the contours of personal jurisdiction over the course of

this decade.  Through its decisions in *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011),

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), *Daimler AG v.

Bauman*, 134 S. Ct. 746 (2014), and *Walden v. Fiore*, 134 S. Ct. 1115 (2014), previous

conceptions of where a corporation is "at home" or what activities create sufficient ties to a

forum for the purposes of establishing jurisdiction over a corporation have been eschewed in

favor of more restrictive formulations.

     *Goodyear* and *Daimler* reduced the exercise of general jurisdiction in favor of specific

jurisdiction.  *Goodyear*, 564 U.S. at 924 ("the paradigm forum for the exercise of general

jurisdiction . . . for a corporation . . . [is] one in which the corporation is fairly regarded as at

---

[6] Stadler Form does not dispute that it derives substantial revenue from international commerce.  (Stadler Reply at 6.)  Indeed, Swizz Style's revenues from New York specifically total approximately $330,000 for the year the air purifier was sold, $530,000 for the year when it caught fire, and $440,000 at the time the action was commenced.  (Baenziger Decl. ¶ 14.)

home") (citation omitted); *Daimler*, 134 S. Ct. at 761 ("the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in *some sense* 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are *so* "continuous and systematic" as to render [it] essentially at home in the forum State'") (citation omitted and emphasis added); *id.* at 761 n.19 ("We do not foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State").

But specific jurisdiction has receded as well under *J. McIntyre* and *Walden*. *See J. McIntyre*, 564 U.S. at 888-89 (Breyer, J., concurring) ("a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place"); *id.* at 882 (Kennedy, J., plurality) ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum"); *Walden*, 134 S. Ct. at 1123 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State").[7]

Against this revised backdrop, in order to determine "whether a forum State may assert specific jurisdiction over a nonresident defendant," the Court "focuses on the relationship among

---

[7] These decisions have serious ramifications for American citizens attempting to sue multinational corporations in American courts. *See J. McIntyre*, 564 U.S. at 894 (Ginsburg, J., dissenting) ("the splintered majority today 'turn[s] the clock back to the days before modern long-arm statutes when a manufacturer, to avoid being haled into court where a user is injured, need only Pilate-like wash its hands of a product by having independent distributors market it.'") (citation omitted); *Daimler*, 134 S. Ct. at 772 (Sotomayor, J., concurring) ("the majority's approach unduly curtails the States' sovereign authority to adjudicate disputes against corporate defendants who have engaged in continuous and substantial business operations within their boundaries"); *see also Brown*, 814 F.3d at 627 ("Offsetting the apparent harshness of [the *Daimler* decision], the Court explained its expectation that its ruling, while restrictive of general jurisdiction, still left plaintiffs with an adjudicatory forum by recourse to specific jurisdiction of courts in states bearing a relationship to the cause of action").

12

the defendant, the forum, and the litigation." *Waldman*, 835 F.3d at 335.  "[T]he assertion of

jurisdiction [must also] 'comport[] with 'traditional notions of fair play and substantial justice'—

that is, [] it [must be] reasonable under the circumstances of [this] case."  *Kernan*, 175 F.3d

at 244 (citations omitted).

### a.  Forum Contacts

"[T]he defendant's suit-related conduct must create a substantial connection with the

forum State" in order for the exercise of jurisdiction to be consistent with due process.

*Waldman*, 835 F.3d at 335 (quoting *Walden*, 134 S. Ct. at 1121).  When considering the

"minimum contacts" that must be present between the defendant and the forum, the "analysis

looks to the defendant's contacts with the forum State itself, not the defendant's contacts with

persons who reside there."  *Id.* (quoting *Walden*, 134 S. Ct. at 1122).  After *J. McIntyre*, "a local

plaintiff injured by the activity of a manufacturer seeking to exploit a multistate or global

market" cannot bring suit against the foreign manufacture in the "courts of the place where the

product was sold and caused injury" without more: "'regular [] flow' or 'regular course' of sales

in [the state]" or a "special state-related design, advertising, advice, marketing, or [something]

else."  *J. McIntyre*, 564 U.S. at 910-11 (Ginsburg, J., dissenting) (citing amongst other cases

*Kernan v. Kurtz-Hastings, Inc.*); *id.* at 889 (Breyer, J., concurring) (controlling opinion).

Thus, despite the *Kernan* court's determination that exercise of personal jurisdiction was

warranted where the manufacturer "did indeed attempt to [indirectly] serve the New York

market," the revised strictures of due process now require "something more."  *Kernan*, 175 F.3d

at 242; *J. McIntyre*, 564 U.S. at 889.  *Compare, e.g.*, *OneBeacon Ins. Grp. v. Tylo AB*, 731 F.

Supp. 2d 250, 260 (D. Conn. 2010) (exercising specific jurisdiction over a foreign manufacturer

that "had no specific knowledge of what would become of its products once it provided them to

[its U.S. distributor], other than the general knowledge that [the distributor] would resell them somewhere in the northeastern United States"), *with Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 513 (D.N.J. 2011) ("there is no doubt that [*J. McIntyre*] stands for the proposition that targeting the national market is *not* enough to impute jurisdiction to all the forum States [and] . . . overruled the line of cases . . . which held to the contrary").  Courts in this Circuit have also recognized that *Kernan* may be in conflict with *J. McIntyre*.  *See Tanner v. Heath Graphics LLC*, No. 15 Civ. 0098 (LEK) (CFH), 2017 WL 922013, at *7 (N.D.N.Y. Mar. 8, 2017) ("*Kernan*'s holding on [due process] conflicts with Justice Breyer's concurrence in [*J. McIntyre*] and is no longer good law."); *Ikeda*, 2015 WL 4096255, at *9 ("The Court notes, however, that *Kernan* was decided before the Supreme Court issued its opinion in [*J. McIntyre*] and that the Second Circuit has not indicated what, if any, effect [that case] has on *Kernan*.").  Thus, Swizz Style's reliance on *Kernan* and similar cases is incomplete with regard to the due process portion of the specific jurisdiction analysis.

The Court in *Daimler*—which focused on general rather than specific jurisdiction— provided a brief overview of situations where a finding of specific jurisdiction would ostensibly still comport with due process, listing forum specific connections such as: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State," "efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States," having its largest distribution of its product in the forum State, or the "continuous[] and deliberate[] exploit[ation]" of the forum State's market.  *Daimler*, 134 S. Ct. at 755 n.7 (quoting *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987)

(opinion of O'Connor, J.), *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

(1980), *Calder v. Jones*, 465 U.S. 783, 789-90 (1984), and *Keeton v. Hustler Magazine, Inc.*, 465

U.S. 770, 780-81 (1984)).

Of the courts in this Circuit that have considered *Kernan*-like situations post-*J. McIntyre*,

only one has found that the exercise of personal jurisdiction over the foreign defendant would

not offend due process.  In *UTC Fire & Sec. Americas Corp. v. NCS Power, Inc.*, the "something

more" was present: the foreign manufacturer had to "approve" any orders it received from its

distributor.  844 F. Supp. 2d 366, 369 (S.D.N.Y. 2012).  That approval requirement led the court

to determine that the manufacturer had "presumptive knowledge" over the "hundreds of

thousands of batteries that were sold to [the injured plaintiff]" as a result of the distributor's

solicitation of business and actual sales within New York.  *Id.* at 376-77 (these factors

demonstrated "a strong[er] inference of an expectation of true national distribution . . . than that

which could be drawn from the *J. McIntyre* defendant's sale of [a] . . . limited number of units to

an independent U.S. distributor").

In the remaining examples, where only an exclusive distributorship agreement existed

between the distributor and manufacturer and allegations of forum-specific contacts were

lacking, courts have understandably found that they cannot constitutionally exercise personal

jurisdiction over the manufacturer.  *Tanner*, 2017 WL 922013, at *7 ("no indication that [the

manufacturer] engaged in any New York-focused activities" where there was "only one

documented sale [made] to New York [and] that sale took place under a nationwide distribution

agreement that did not explicitly target New York"); *Ikeda*, 2015 WL 4096255, at *8 (no

allegations present "that demonstrate [the manufacturer's] specific effort to sell in New York,

such as 'special state-related design, advertising, advice, marketing, or anything else.'");

15

*Davidson v. Honeywell Int'l Inc.*, No. 14 Civ. 3886 (LGS), 2015 WL 1399891, at *3 (S.D.N.Y.

Mar. 26, 2015) (manufacturer's "alleged negligence in the design, manufacture and assembly of

[a part] on the aircraft . . . took place in Maryland," the manufacturer "never manufactured or

sold [the part] to customers in New York," and the plaintiffs did not show "any action

purposefully directed toward New York"); *Boyce v. Cycle Spectrum, Inc.*, 303 F.R.D. 182, 186

(E.D.N.Y. 2014) (no allegations of "any arrangements with companies incorporated or doing

business in New York to sell bicycle parts or bicycles containing [the manufacturer's] parts in

New York," and the manufacturer "did not target the New York market"); *Dejana v. Marine*

*Tech., Inc.*, No. 10 Civ. 4029 (JS) (WDW), 2011 WL 4530012, at *6 (E.D.N.Y. Sept. 26, 2011)

(manufacturer "d[id] not have representatives in New York, [] ha[d] not delivered boats to New

York, and [] d[id] not solicit sales in New York").

The thoughtful analysis in *Ikeda v. J. Sisters 57, Inc.* serves as a useful comparator, since

the action involved a similar scenario, and the court determined that although New York's long-

arm statute was satisfied, the allegations in that case were insufficient to allow it to exercise

jurisdiction over a foreign defendant in accordance with the bounds of due process.  2015 WL

4096255, at *5, *8.  In *Ikeda*, a consumer was injured by a hair care product in New York.  *Id.*

at *1.  The product's sole U.S. distributor was based in Florida, and the product's manufacturer

was based in the United Kingdom.  *Id.* at *2.  There, the plaintiffs failed to allege "that any

additional products manufactured by [the foreign manufacturer] reached the New York market,

let alone ventured to estimate the volume of [its] goods that make their way into the state."  *Id.*

at *8.  "Nor ha[d] they alleged any other facts that demonstrate[d] [the manufacturer's] specific

effort to sell in New York, such as 'special state-related design, advertising, advice, marketing,

or anything else.'"  *Id.*  Thus, the Court had no choice but to find the plaintiffs' jurisdictional

16

allegations lacking.  *Id.* at *8-10 (providing the plaintiffs with the opportunity to conduct

jurisdictional discovery prior to dismissing the complaint).

In contrast to *Ikeda*, Swizz Style has alleged that a significant volume of its sales—as the

exclusive distributor in the United States—were directed to New York, that Stadler Form was

aware and "targeted" New York specifically, and that Stadler Form might reasonably have

suspected it could be called upon to answer for any fires related to the Viktor air purifiers in light

of the retrofitting kits it provided to Swizz Style to correct the overheating problem.  On the basis

of these allegations, Stadler Form has even greater knowledge of New York's importance in

terms of product sales than the manufacturer in *UTC Fire*—and the items missing from *Ikeda* are

present.  *See also Darrow v. Deutschland*, 119 A.D.3d 1142, 1144-45 (3d Dep't 2014) (German

corporation's "awareness" of the regional distribution network by which its products were

distributed to New York provided minimum contacts "compatible with federal due process

standards").  Therefore, Swizz Style has alleged Stadler Form had the minimum contacts with

New York necessary to support the exercise of specific jurisdiction.

### b.  Reasonableness

Because Swizz Style has established the necessary minimum contacts between Stadler

Form and New York, the Court must decide if the exercise of personal jurisdiction over the

Swiss corporation would be reasonable.  *Kernan*, 175 F.3d at 244.  The burden now shifts to

Stadler Form to proffer a compelling reason against the exercise of jurisdiction.  *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) ("where a defendant who purposefully has

directed his activities at forum residents seeks to defeat jurisdiction, he must present a

compelling case that the presence of some other considerations would render jurisdiction

unreasonable").  The reasonableness of jurisdiction is inversely proportional to the minimum

contacts present.  *See id.* ("[reasonableness] considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required").

> There are five "reasonableness" factors that inform this determination:
>
>> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies.

*Kernan*, 175 F.3d at 244.  In this modern era, the first prong is largely disregarded with respect to solvent corporate defendants.  *Id.* at 244 ("the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago").  And it is hard to imagine that a corporation with distributors in every country across the globe would be heavily burdened by travel or translation costs.

As for New York's interest in adjudicating this case, Stadler Form argues an action for indemnification is largely unimportant to the State.  *See Asahi*, 480 U.S. at 114-15 ("The dispute between [the Taiwanese corporation] and [the Japanese corporation] [was] primarily about indemnification rather than [enforcing] safety standards").  And it is true that Swizz Style's foreign corporate status weighs against New York's interest in this matter.  *Id.* at 114.  But the real question is whether New York is concerned with or interested in providing a pathway to full recovery for the damages caused by the allegedly defectively designed product.

The two phases of the action cannot be artificially broken apart.  A citizen of New York was allegedly harmed by tortious conduct.  For his insurer to recoup the costs of the damages, a solvent liable party must be held accountable.  If the distributor was held liable without efficient recourse against the manufacturer of the item, then in many scenarios the distributer would

become effectively judgment proof—particularly in costly products liability litigation.  New York would surely not welcome such a result.  And the same reasoning demonstrates Swizz Style's interest in having Stadler Form in the litigation.

As to the interstate judicial systems' interest in efficiency or the shared interest between New York and Switzerland in furthering particular policies, neither party has addressed the issues in depth with regard to any conflicts between New York and Switzerland.[8]  The Court disagrees that New York's general interest in protecting its citizens is outweighed by Stadler Form's conflicting assertion that it did not target this forum.  Swizz Style has alleged monthly meetings updating Stadler Form as to the product's key markets—including New York.  Moreover, the Court finds that the underlying product liability determinations will be far more efficient, and that consumers in New York that may be at risk from potentially faulty products will be more protected, by keeping Stadler Form in the case.

As Stadler Form has failed to make a compelling demonstration to the contrary, the reasonableness factors weigh in favor of exercising jurisdiction over Stadler Form in this action.

---

[8]  Stadler Form and Swizz Style disagree as to the import of one provision contained in one of the agreements between the parties, though Stadler Form largely concedes it is inapplicable to the instant dispute, with which the Court agrees. (*See* Stadler Mot. at 17.)  The agreement cited by Stadler Form restructured the corporate relationship between it and Swizz Style, and acknowledged that Swizz Style would continue to be the exclusive distributor of Stadler Form products in the United States. (*See* Decl. Thomas Pender in Supp. of Mot., Ex. 1, ECF No. 39.)  The specific provision at issue states: "All disputes in connection with this agreement will be negotiated without recourse of the Legal System and decided by a judge.  Every legal recourse is excluded." (*Id.* at ¶ 16.)

Undoubtedly, whether due to translation or drafting errors, the provisions are unclear and internally inconsistent.  The provision indicates that all "legal recourse is excluded."  In accordance with that exclusion, "[a]ll disputes *in connection with* th[e] agreement" were required to be "negotiated without recourse [to] the Legal System[.]"  Yet disputes were also to be "decided by a judge."  The inconsistencies cannot be reconciled.

In any event, drawing all inferences in favor of Swizz Style, the Court finds that liability for design defects causing damage to a consumer's property is unrelated to the scope of this particular agreement and construes the provision narrowly as relating only to disputes relating to the restructuring of the companies, or to the ongoing validity of the exclusive distribution agreement between Swizz Style and Stadler Form, but not to secondary matters such as indemnification under circumstances like those alleged in this case.

**CONCLUSION**

For the foregoing reasons, Third-Party Defendant's motion to dismiss for lack of personal

jurisdiction is DENIED.  The Clerk of Court is respectfully directed to terminate the motion at

ECF No. 42.  Third-Party Defendant shall file any answer to the Third-Party Complaint on or

before April 14, 2017.  The parties are directed to inform Judge Davison of this Court's ruling

and to revise their case management plan accordingly.


Dated:    March 23, 2017                                    SO ORDERED:
          White Plains, New York

                                                            NELSON S. ROMÁN
                                                            United States District Judge